UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DEBORAH JONES, an individual,

       Jones,

                                       Case No.: 3:15-cv-01410-J-34JRK

vs.

THE CITY OF JACKSONVILLE, a municipal
corporation in the State of Florida,

       JSO.
_____/

### JONES'S SUR-REPLY TO JSO'S REPLY TO PLAINITFF'S RESPONSE TO JSO'S MOTION FOR SUMMARY JUDGMENT[1]

Plaintiff Deborah Jones submits the following sur-reply to JSO's April 14, 2017 reply.

In its reply, JSO claims that the two reported statements were "isolated," [Doc. 41, at 2], but the very quote cited by JSO also establishes that Cao's "overall conduct" was pervasive: "It was derisive, condescending. It was humiliating." Jones depo. 193:4-9.[2] JSO claims that "Jones' [first] complaint was only prompted when Chief Diaz called a meeting to address her job performance." [Doc. 41 at 2], but the record reflects that the meeting was called to address Cao's conduct. Jones depo. 104:12-17.

JSO suggests that the discrimination was not severe or pervasive because Jones only made two reports [Doc. 41, at 2], but the record establishes that it was Diaz' refusal to investigate or to seriously address her two complaints that dissuaded Jones from making any additional reports. Jones depo. 126:17-25,127:14-19. Diaz rebuffed the two other employees who

---

[1] Contrary to the JSO's suggestion at Doc. 41 at 1, the hostile work environment allegations were clearly pled in the complaint, and were integral to the claims that had been raised in the instant case. *See* Doc.13, ¶¶42,47 and 52. JSO's failure to assert these matters in its initial brief constitutes a waiver of these matters for summary judgment purposes. *Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 311 n.82 (S.D. Ala. 2006) ("It is well accepted that raising of new issues and submission of new facts in reply brief is improper.") (citations omitted).

[2] Deponent names used in transcript references. Doc 37, n. 2 provides record reference for each deposition.

independently complained about Cao's treatment of Jones, confirming Jones' conclusion that complaining was futile. Engleskirch depo. 22:20-23:1; Green depo. 15:7-15.

JSO states "Jones was extremely sensitive, took everything Cao said personally, and believed that his statements could only be referring to her," Doc. 41 at 3, but the testimony JSO cites contradicts its assertion. Jones was questioned in deposition whether she agreed with Diaz' calling her excessively sensitive, and Jones responded "no." Jones depo. 122:14-16. When asked if Cao's statements in group settings were directed at her specifically, Jones responded, "Well, not necessarily every time. It depended on the sc- -- scenario…" Jones depo. 58:13-14.

JSO incorrectly cites the record in asserting that "[t]he majority of criticism and belittling Jones found objectionable simply related to Cao's responsibility to oversee her work." Doc. 41 at 3. Jones specifically denied such assertion, stating that her problems with Cao were the result of Dr. Cao's finding her objectionable as a human being. Jones depo. 101:12-22. Jones further explained that Dr. Cao belittled her when offering both work-related and non-work-related criticism. Jones depo. 102:6-16.[3]

JSO claims that "there is no evidence in the record that the offensive conduct 'unreasonably interfered' with Jones's job performance." Doc. 41 at 3. The hostility in the work environment caused Jones to cry on an almost daily basis, Higuchi depo. 31:5-19; Schinagl depo. 20:22-22:2; Green depo. 20:16-21:1; Ice depo. 28:23-29:3, caused her sufficient distress that another employee had to bring her a glass of water, Tate depo. 45:9-17; Engelskirch depo. 39:6-15, caused her to leave the workplace; Schinagl depo. 20:22-22:2; and caused her to become

---

[3] JSO claims that Jones' desire to be reinstated in the weeks following her termination is evidence that the work environment was not hostile. Doc 41 at 3-4. Jones explained, "[w]ell, I wanted to continue to learn. I was in hopes that there would be a more amicable relationship. I mean, the opportunity to learn from a psychiatrist was what drove me there to begin with." Jones depo. 182:6-10. Her desire to work in an environment which she hoped would drastically improve does not support JSO's position.

increasingly "distraught, nervous, tearful, scared, depressed." Higuchi depo. 36:19-37:5.. As Michelle Craun testified:

> Dr. Cao treated [Jones] with seething contempt. He regularly spoke to her in a degrading manner in the presence of other employees. I specifically remember him calling her stupid and I remember his tone in addressing her being so humiliating that everyone around them stopped what they were doing and went silent.
> I never saw Dr. Cao treat another person in the office the way he treated Ms. Jones. In my observation. . . Dr. Cao treated Ms. Jones in this manner consistently, which made it very difficult for her to approach him in the office.

Doc. 37-1. Humiliating Jones in front of her peers; making it difficult for her to even approach her supposed mentor; and making her leave work to cry affected Jones' work.

JSO asserts in its reply that the various discriminatory comments were not directed at Jones, chiefly because Cao did not always use Jones' name when he made the comments, and because some comments were made in a group setting. Doc. 41 at 4. In support, JSO cites a portion of Jones transcript which actually contradicts its position: "Well, there were only the three of us present, and he was directly looking at me when he said it, so he did not say, Deborah Jones, you're an old ugly, woman, but it was apparent." Jones depo. 48:2-7. In support of its claim regarding the intended victim of the rape comment, JSO cites only to the knee-jerk conclusion Diaz reached even before investigating the complaint. Diaz depo. 103:14-104:12. Jones contradicts Diaz' uninvestigated assumption. Jones depo., 123:16-21. Jones' two co-workers who independently complained about Cao's conduct obviously also believed that Cao's treatment was directed towards Jones.[4]

JSO argues that "childless," "divorced," and "ugly" are not indicative of protected class discrimination, Doc. 41 at 5, but omits the words "old," "women," and "whores" that were used

---

[4] Cao confided to one witness that he he "didn't know why" he treated her Jones badly but that he "couldn't help himself." Higuchi depo. 35:15-36:14.

in conjunction with the words JSO picks out of context. Jones depo, 41:13-20; Higuchi depo., 10:2-9; Schinagl depo., 19:11-20:3.

JSO claims that it took remedial action in response to the complaints, Doc 41 at 6, but such claim is very much disputed. Cao testified that he was never disciplined, and never even confronted with the statements reported in September 2013. Cao depo., 64-65, and 66:10-11. Other than notes of a conversation suggesting that Cao "may have crossed the line" after the second complaint, Doc. 34-3:163, no record exists of any investigation, let alone any corrective action.[5] In response to Jones' second complaint, and before he had a chance to conduct any investigation, Chief Diaz proclaimed that Jones was excessively sensitive, Doc. 34-2:98; told Jones that "Dr. Cao is essential to us;" and summarily concluded that "[t]he comment about rape was not directed to you and it seemed to be a joke. . ." *Id.* Diaz immediately reprimanded Jones, stating that her "role was to work with him and 'be his right hand,' so he is asking her to adapt." *Id.* Diaz then suspended Jones. *Id.*

JSO claims that Diaz "counseled" Dr. Cao by telling him that his comment "may have crossed the line," and therefore asserts that JSO is not liable for discrimination Doc 41 at 6.[6] The *Faragher v. City of Boca Raton*, 524 U.S. 775, 777-78 (1998) corrective action defense is unavailable when an employer acts in bad faith. *Freytes-Torres v. City of Sanford*, 270 Fed. Appx. 885 (11th Cir. 2008); *United States EEOC v. Dillard's, Inc.,* No. 6:07-cv-1496-Orl-19GJK, 2009 U.S. Dist. LEXIS 23605, at *38 (M.D. Fla. Mar. 23, 2009) (finding no effective policy when complaint was not investigated, and when previous complaints were ignored.)

---

[5] None of JSO's citations support the existence of an investigation, [Doc.41:6], do so. Co-worker Ice recalls Diaz asking her whether Jones was overly "sensitive" (to which she denied), but recalls Diaz asking nothing about Cao's conduct. Ice depo., 16-17. Cao testified that he was never questioned about any of the statement, Cao depo, 64:14-16, 66:5-8; and his "counseling" consisted of "Chief Al talked to me about her complaining about me." *Id*, at 66:17-18. Diaz "believe[d]" that he spoke with Cao about the statements, but had no specific recollection of doing so. Diaz depo, 86. Director Wildes' had a hazy, uncertain, memory of Diaz telling her that he may have conducted some sort of investigation. Wildes depo, 12-13.

[6] No documentation of the supposed "counseling" exists, contrary to JSO policies. Wildes depo. 19:22-20:7.

4

Failing to investigate claims or address misconduct, rejecting the complainant's story without investigating, covering up the harasser's age and gender-related comments[7], and disciplining the complainant before the investigation is the definition of bad faith.[8]

JSO argues that a hostile working environment exists only if the harasser specifically uses discriminatory words each time he engages in acts of abuse. Dr. Cao treated Jones differently than men and younger women; behaved so outrageously that co-workers independently complained on Jones' behalf; and made a variety of statements revealing his age and gender bias were the reasons he mistreated her. If a supervisor spits on each of his African-American employees every day, but only occasionally accompanies his spitting with racial slurs, he still creates a racially hostile work environment. Merely because Dr. Cao did not mention Jones's age and gender each time he belittled her, yelled at her, turned his back on her, ignored her, demeaned her, or treated her like a dog does not logically equate to his having a non-discriminatory reason for his outrageous treatment. When finally confronted with his statements (by an overly-apologetic Chief Diaz), Cao referred to Jones a "the middle aged woman," confirming that he viewed and treated Jones through the lens of her age and gender. Doc. 34-12:85 (or Doc. 37-2).

The record is replete with factual disputes that preclude summary judgment.

---

[7] Compare Doc. 34-12:85 (or Doc. 37-2) and Doc. 34-3:163-164, which show that Cao's "middle-aged woman" comment was included in the hand-written meeting notes but omitted from the typed report.

[8] JSO also purports to address whether Dr. Barnes' eleventh-hour affidavit is so contrary to her previous statement that its creation supports a finding of pretext . Doc. 41 at 7. In truth, JSO's argument does not explain why Barnes suddenly condemns Jones' conduct after having failed to do so when first requested by Diaz to originally provide an evaluation. In reality, if the affidavit is not admitted to establish pretext, Barnes' testimony would not otherwise be admissible since it was not relied by the decision-maker when the decision was made. *McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 115 S. Ct. 879, 130 L. Ed. 2d 852, (U.S. 1995)

RESPECTFULLY SUBMITTED this 4th day of May, 2017.

  /s/ T.A. "Tad" Delegal, III
T.A. Delegal, III, B.C.S.
Florida Bar No. 0892701
tad@delegal.net
James C. Poindexter
Florida Bar No. 0116039
james@delegal.net
DELEGAL LAW OFFICES, P.A.
424 East Monroe Street
Jacksonville, FL 322602
Phone (904) 633-5000
Facsimile (904) 358-2850

*and*

James L. D'Andrea
Florida Bar No. 932401
jdandrea@miltonleach.com
MILTON, LEACH, WHITMAN,
  D'ANDREA & ESLINGER, P.A.
3127 Atlantic Boulevard
Jacksonville, Florida 32207
(904) 346-3800 – Telephone
(904) 346-3692 – Facsimile

*Attorneys for Jones*

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 4th day of May, 2017, I uploaded the foregoing to the Clerk of the United States District Court for filing via the CM/ECF system, and that a true and correct copy of the foregoing has been furnished via electronic service to all CM/ECF system participants.

    Tad Delegal
    Attorney